ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 02 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* KARLENE HOLLIMON, | ) ) ) | ***FILED UNDER SEAL*** |
| Plaintiff-Relator, | ) ) | |
| STATE OF GEORGIA, *ex rel.* KARLENE HOLLIMON, | ) ) ) | |
| Plaintiff-Relator, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | **1:21-CV-4943** |
| CRH HEALTHCARE, LLC, *d/b/a* Patients First, Patriot Urgent Care, Peachtree Immediate Care LLC, and Urgent Medcare, and JOHN DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

1.  On behalf of the United States of America pursuant to the *qui tam* provisions of the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and on behalf of the state of Georgia pursuant to the *qui tam* provisions of the Georgia False Medicaid Claims Act ("GFMCA"), O.C.G.A. § 49-4-168 *et seq.*, Plaintiff-Relator KARLENE HOLLIMON files this complaint against Defendants CRH HEALTHCARE, LLC, *d/b/a* Patients First, Patriot Urgent Care, Peachtree Immediate Care LLC, and Urgent Medcare, and JOHN DOES 1-10 (collectively, "CRH" or "defendants").

- 1 -

2.     The damages to the United States and the state of Georgia arise
out of Defendant CRH's submission of thousands of false claims to federal
and state healthcare programs for patient office visits that *never* occurred
using CPT codes 99202-99205 and 99212-99215—which all require the
physician listed on the CMS 1500 to have met face-to-face with the patient—
because the patient-beneficiaries' only face-to-face encounters were with
clinical staff, not doctors, for (a) drive-thru COVID-19 tests where the
patients never left their cars, or (b) in-clinic tests where the patients never
saw a physician.

3.     The damages sustained by the United States and the state of
Georgia because of Defendant CRH's violations of the FCA and the GFMCA
exceed, on information and belief, at least $2 million.

4.     RELATOR also brings an FCA retaliation claim against
Defendant CRH for being fired after complaining that defendants were
falsely and fraudulently billing for patient office visits that never occurred.

## *Jurisdiction and Venue*

5.     This action arises under the False Claims Act, 31 U.S.C. § 3729,
*et seq*., and the GFMCA, O.C.G.A. § 49-4-168 *et seq*.  This Court has
jurisdiction over this action pursuant to 31 U.S.C. §§ 3732(a) and 3732(b),
and 28 U.S.C. §§ 1345 and 1367.

6. Venue is proper in this district under 31 U.S.C. § 3732(a). At least one defendant can be found, resides, or transacts business within this district, or at least one act proscribed by 31 U.S.C. § 3729 occurred within this district.

7. This Court has personal jurisdiction over Defendant CRH.

## *The Parties*

8. KARLENE HOLLIMON, acting in the capacity as relator for the United States pursuant to 31 U.S.C. § 3730(b) and as a relator for the state of Georgia pursuant to O.C.G.A. § 49-4-168.2(c), is the plaintiff-relator in this action (the "RELATOR"). RELATOR is a citizen of the United States and the state of Georgia.

9. Defendant CRH HEALTHCARE, LLC is a limited liability corporation incorporated under the laws of the state of Delaware, with its principal place of business at 2675 Paces Ferry Road SE, Suite 200, Atlanta, Georgia, 30339, and its website at https://crhhealthcare.com/.

10. Defendants JOHN DOES 1-10 are current and/or former physicians and high-level employees of the defendants who knowingly participated in the illegal activities alleged in this action.

## *The Victim Programs*

11. The Medicare program is a federally funded health insurance program. Medicare Part B and Part C cover patient office visits and other

- 3 -

outpatient services, including diagnostic testing for the COVID-19 virus.

Medicare covers persons over 65 years of age, as well as individuals 18 years

of age or older who are disabled and eligible for disability benefits and Social

Security Income ("SSI").

12.     The Medicaid program, including Georgia's, provides medical

benefits to qualifying low-income individuals who have no medical insurance

or inadequate medical insurance—including for patient office visits and other

outpatient services, such as diagnostic testing for the COVID-19 virus. The

Medicaid program in each state is financed with monies appropriated by the

United States Congress and from the state itself.

13.     The United States Department of Defense ("DOD") provides in-

patient and out-patient care and federal health benefits to active-duty

military personnel—including for patient office visits and other outpatient

services, such as diagnostic testing for the COVID-19 virus. The DOD is

funded with taxpayer funds appropriated by the United States Congress.

14.     The Veterans Administration ("VA"), a part of the United States

Department of Veterans Affairs, provides patient care and federal benefits to

veterans and their dependents—including for patient office visits and other

outpatient services, such as diagnostic testing for the COVID-19 virus. The

VA is funded with monies appropriated by the United States Congress.

15. TRICARE is a federally funded health care program that covers the costs of services and devices delivered by civilian healthcare providers to active duty service members, National Guard and Reserve members, retirees, and their families and survivors worldwide—including for patient office visits and other outpatient services, such as diagnostic testing for the COVID-19 virus.

16. Federal Employee Health Benefits Programs ("FEHBP") provides healthcare benefits for qualified federal employees and their dependents—including for patient office visits and other outpatient services, such as diagnostic testing for the COVID-19 virus. The United States government pays a portion of each participating employee's premium.

## Submission and Payment of Claims

17. Reimbursement of a healthcare provider's claim for any service—including patient office visits with a physician or other qualified healthcare professional—requires that the service be reasonable, medically necessary, and actually be delivered.

18. Medicare, Medicaid, and the DOD, VA, TRICARE, and FEHBP healthcare programs (collectively, the "VICTIM PROGRAMS") cover the costs of patient office visits billed under CPT Codes 99202-99205 for "new patients" and under CPT Codes 99212-99215 for "established patients."

19. Claims for payment of covered services are made using a CMS 1500 form, which is submitted electronically or manually to contractors (insurance companies) that administer the VICTIM PROGRAMS.

20. The reimbursement practices for Medicare closely align with those for the other VICTIM PROGRAMS.

21. Intentionally submitting claims for services that did not occur is fraudulent and illegal.

## *The CPT Codebook*

22. The Current Procedural Terminology ("CPT") Codebook is a set of identifying codes and descriptive terms for reporting medical services and procedures performed by physicians.

23. In 2000, the CPT code set was designated by the U.S. Department of Health and Human Services as the national coding standard for physician and other health care professional services and procedures under the Health Insurance Portability and Accountability Act.

24. As a result, the CPT code set must be used for all claims on a CMS 1500 seeking reimbursement of physician services under government and private health insurance programs—including the VICTIM PROGRAMS.

25. The CPT code on a CMS 1500 indicates to the program-payor the level of service or procedure rendered by the physician and determines the amount of the reimbursement to be paid.

## *CPT Coding for Patient Office Visits*

26.     When a medical practitioner sees a patient in the office for evaluation and management (E/M), the practitioner selects the applicable CPT codes, which are entered on a CMS 1500, to reflect the services performed.

27.     Through December 31, 2020, the CPT codes for a "new patient" E/M office visit with a physician range from the least expensive to the most expensive, 99201-99205.  Effective January 1, 2021, CPT 99201 was eliminated.

28.     The CPT codes for an "established patient" E/M office visit with a physician range from the least expensive to the most expensive, 99212-99215.

29.     To bill for an E/M office visit using CPT 99201-99205 and 99212-99215, the rendering physician listed on the CMS 1500 must have personally had a face-to-face encounter with the patient-beneficiary identified on the CMS 1500.

30.     When, however, an established patient has a face-to-face encounter with clinical staff, but not a physician, for a problem of minimal complexity—such as taking a routine specimen sample—the encounter is properly billable as an "incident to" service using CPT code is 99211.  See 42 CFR § 405.2415.

## *CMS Issues a Special Coding Rule for COVID-19 Tests*

31.    On May 8, 2020, in response to the COVID-19 epidemic, the

Centers for Medicare and Medicaid Services ("CMS") issued a special billing

rule for COVID-19 assessments and specimen collection.

32.    CMS issued an interim rule for the duration of the COVID-19

public health emergency ("PHE") that CPT 99211 could also be used when

clinical staff, with no physician involvement, perform an assessment on and

collect a specimen from new patients for a COVID-19 test.

33.    CMS explained:

> Typically, collection of a specimen via nasal swab or other method
> during the provision of a service might be reported as part of
> (bundled with) an office/outpatient E/M visit (CPT codes 99201-
> 99205, 99211-99215).  In visits where a patient has face-to-face
> interaction with a billing professional with whom they have an
> established relationship, these services are generally reported
> with a level 2 through a level 5 visit (CPT codes 99212-99215).  In
> cases where the specimen is collected during a visit where the
> face-to-face interaction only involves clinical staff of the billing
> professional with whom the patient has an established
> relationship, these services are generally reported using CPT
> code 99211....
>
> During this PHE, we understand that some professional practices
> are collecting specimens for COVID-19 tests.  In many cases, we
> expect that these services are appropriately paid as part of the
> visit codes described above.  Given the critical need for
> widespread testing as part of the pandemic response, we also
> expect that COVID-19 specimen collection may occur in
> circumstances other than the typical interaction between the
> patients and the professionals or staff of these practices.  In our
> review of available HCPCS codes, we did not identify a code that
> would specifically describe the services that would be furnished

in the context of large-scale dedicated testing operations involving a physician or NPP, specifically, assessment of COVID-19 symptoms and exposure, and specimen collection for new patients. In circumstances outside of the PHE, such a code would not be needed. We would ordinarily expect physicians and NPPs to establish a relationship with a patient before their clinical staff could effectively assist in managing care incident to their services. However, in the context of the widespread testing that is necessary during this COVID-19 PHE, we believe it is important to recognize such a service for new patients in addition to established patients.... Therefore, for the duration of the PHE, we will recognize physician and NPP use of CPT code 99211 for all patients, not just patients with whom they have an established relationship, to bill for a COVID-19 symptom and exposure assessment and specimen collection provided by clinical staff incident to their services.

For the duration of the COVID-19 PHE, ... when the services described by CPT code 99211 for a level 1 E/M visit are furnished for the purpose of a COVID-19 assessment and specimen collection, the code can be billed for both new and established patients.

https://www.federalregister.gov/documents/2020/05/08/2020-09608/medicare-

and-medicaid-programs-basic-health-program-and-exchanges-additional-

policy-and-regulator.

### *Defendant CRH's 56 Clinics Have One Billing Director*

34.    From at least January 1, 2020 through at least October 31, 2021,

Defendant CRH has operated approximately 56 urgent care—or "doc in the

box"—clinics in four states using different names in each state:

(a)    Peachtree Immediate Care (peachtreemed.com), with 43

locations in Georgia;

(b) Urgent Medcare (urgentmedcareonline.com), with three (3) locations in Alabama;

(c) Patients First (patientsfirst.com), with six (6) locations in Florida; and

(d) Patriot Urgent Care (patriotuc.com), with four (4) locations in Maryland (a/k/a, StatCare Group LLC, a Maryland corporation).

35. At all relevant times, Defendant CRH had a single "Director of Billing Operations" for all 56 clinic locations.

36. Defendant CRH's billing director was named Shandi Faulk.

37. Faulk directed, controlled, and supervised the billing-related activities of Defendant CRH's employees regardless of location.

### *Relator's Employment with Defendant CRH*

38. From on or about February 7, 2017, through October 18, 2021, RELATOR was employed by Defendant CRH in Cobb County, Georgia.

39. From on or about February 7, 2017, through on or about December 2020, RELATOR worked as a "billing specialist," with the following duties:

(a) Submitting corrected claims to insurance companies, including contractors acting on behalf of the VICTIM PROGRAMS;

(b)     Contacting insurance companies, including contractors acting on behalf of the VICTIM PROGRAMS, about previously submitted but unpaid claims;

(c)     Requesting payments for unpaid claims from insurance companies, including contractors acting on behalf of the VICTIM PROGRAMS;

(d)     Writing appeals of unpaid claims to the insurance companies, including contractors acting on behalf of the VICTIM PROGRAMS; and

(e)     Other duties, as assigned.

40.     From on or about December 2020, through on or about October 18, 2021, RELATOR worked in "billing customer service," with the following duties:

(a)     Notify Defendant CRH's billing director—Shandi Faulk— about of pending coding issues;

(b)     Notify Defendant CRH's billing director about of pending billing issues;

(c)     Answer patients' telephone calls about coding and billing issues;

(d)     Resolving patients' coding and billing issues;

- 11 -

(e)     Resubmitting corrected claims to insurance companies, including contractors acting on behalf of the VICTIM PROGRAMS;

(f)     Correcting patients' demographic information in Defendant CRH's computer system; and

(g)     Collecting co-pays and any unpaid balance from patients.

41.     At all times during RELATOR's employment, Defendant CRH Billing Director Shandi Faulk directed, controlled, and supervised RELATOR's billing-related activities with the VICTIM PROGRAMS and their patient-beneficiaries.

### *Defendants' False Claims Scheme*

42.     Starting on or about the spring of 2020, Defendant CRH instituted government-approved drive-thru COVID-19 testing outside its clinics in Georgia, Alabama, Florida, and Maryland.

43.     At or about the same time, Defendant CRH performed COVID-19 testing inside its clinics in Georgia, Alabama, Florida, and Maryland.

44.     At all relevant times, for new and established patients who wanted only a COVID-19 drive-thru or in-clinic test—involving no physician interaction—Defendant CRH used exclusively non-physician personnel, such as nurse practitioners and medical assistants, to perform all aspects of the patient's face-to-face encounter.

45.    From on or about the Spring 2020 through at least as late as October 2021, Defendant CRH falsely billed the VICTIM PROGRAMS for thousands of drive-thru and in-clinic COVID-19 tests as E/M office visits—despite no physician face-to-face encounter with the patient-beneficiaries—using CPT codes 99202-99205 and 99212-99215.

46.    According to CMS's interim final rule of May 8, 2020, Defendant CMS was required to bill its drive-thru and in-clinic COVID-19 tests under CPT 99211, because no face-to-face encounter occurred between the physician listed on the CMS 1500 and the patient-beneficiary.

47.    At all relevant times, Defendant CRH's billing director—Shandi Faulk—directed the billing staff to bill using CPT E/M office-visit codes that required an actual physician-patient face-to-face encounter.

48.    In a September 11, 2020 email, Faulk justified the false claims by saying:

> Because they [the non-physician clinical staff] are doing all the same components of an OV [office visit] at the drive thru testing site, obtaining vitals, history, visual exam if no symptoms, physical exam if patient is symptomatic, order and resulting of test results.  No different than going physically into the clinic. This is how we are to report per payor guidelines.

49.    In 2020 and 2021, a claim for service under CPT code 99211 was reimbursed by Medicare at $23.46 and $22.36, respectively.

50.     In 2020 and 2021, a claim under CPT codes 99202-99205 and

99212-99215 was reimbursed at a substantially higher rate than CPT code

99211—from 3-4 times more to up to almost 10 times as much—as follows:

| CPT | 2020 | 2021 | | CPT 99211 |
|-----|------|------|-----|-----------|
| 99202 | $ 74.32 | $ 69.35 | vs. | $ 23.46 / 22.36 |
| 99203 | $114.14 | $106.62 | vs. | $ 23.46 / 22.36 |
| 99204 | $172.01 | $160.10 | vs. | $ 23.46 / 22.36 |
| 99205 | $227.13 | $211.63 | vs. | $ 23.46 / 22.36 |
| 99212 | $ 46.19 | $ 54.45 | vs. | $ 23.46 / 22.36 |
| 99213 | $ 76.15 | $ 87.18 | vs. | $ 23.46 / 22.36 |
| 99214 | $110.43 | $123.48 | vs. | $ 23.46 / 22.36 |
| 99215 | $148.33 | $173.06 | vs. | $ 23.46 / 22.36 |

51.     From at least the Spring 2020 to on or about October 31, 2021,

thousands of patient-beneficiaries of the VICTIM PROGRAMS received

drive-thru and in-clinic COVID-19 tests at Defendant CRH's 56 clinics.

52.     From at least the Spring 2020 to on or about October 31, 2021,

thousands of patient-beneficiaries of the VICTIM PROGRAMS who received

drive-thru and in-clinic COVID-19 tests at Defendant CRH's 56 clinics never

had any face-to-face encounter with a physician as part of any E/M office visit

in connection with the tests.

53.     From at least June 2020 to on or about October 31, 2021,

Defendant CRH knowingly and intentionally submitted thousands of false

claims to the VICTIM PROGRAMS for the drive-thru and in-clinic COVID-19

- 14 -

tests at Defendant CRH's 56 clinics using CPT codes 99202-99205 and 99212-99215—even though E/M office visits requiring face-to-face encounters between the patients and physicians never occurred—instead of using CPT code 99211 for these staff-administered tests involving no physician face-to-face encounters.

54.     At various relevant times, after receiving their explanations of benefits, scores of patient-beneficiaries of the VICTIM PROGRAMS who received drive-thru and in-clinic COVID-19 tests at Defendant CRH's clinics complained to employees of Defendant CRH—including RELATOR—that Defendant CRH was wrongly submitting claims for E/M office visits that never occurred.

55.     At various times from July 2020 through October 2021, RELATOR complained to Defendant CRH billing director Shandi Faulk that patient-beneficiaries were objecting that Defendant CRH was wrongly submitting claims for E/M office visits that never occurred.

56.     In a July 2, 2020 email to Defendant CRH billing director Shandi Faulk, RELATOR wrote:

> We hav[e] been getting a[]lot of calls as mentioned before where patient is saying the insurance companies [are] saying we are billing the wrong CPT and ICD-10 codes []as it relates to COVID testing and the Antibody testing.  Due to this according to [sic] the patient states they are left with having to pay copays and deductibles.

57. Despite complaints by RELATOR and patient-beneficiaries of the VICTIM PROGRAMS, Defendant CRH continued to submit thousands of false claims for patient E/M office visits that never occurred using CPT codes 99202-99205 and 99212-99215—when in fact, as Defendant CRH well knew, the only services provided were COVID-19 drive-thru and in-clinic tests by clinical staff that involved no face-to-face encounters between the patients and physicians listed on the CMS 1500s.

58. As a result of Defendant CRH's false-claims scheme, Medicare, Georgia Medicaid, and the other VICTIM PROGRAMS paid Defendant CRH at least $2 million more than Defendant CRH should have been paid had it submitted accurate claims using CPT code 99211.

59. Within a short time of RELATOR's last complaint to Defendant CRH's billing director about its false claims for E/M office visit, Defendant CRH fired RELATOR for an allegedly poor performance.

## COUNT 1
## Violation of 31 U.S.C. § 3729(a)(1)
### (*Submission of a False or Fraudulent Claim for Payment*)

60. Plaintiff-Relator KARLENE HOLLIMON hereby realleges and incorporates by reference paragraphs 1-59 of this Complaint.

61. This is a claim for damages and civil money penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., against Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 for knowingly presenting or

causing to be presented false or fraudulent claims for payments from the United States, through the VICTIM PROGRAMS, all in violation of 31 U.S.C. § 3729(a)(1).

62. These claims were false or fraudulent because the defendants induced the United States, through the VICTIM PROGRAMS, to pay claims based on false statements, representations, and certifications that E/M office visits occurred involving face-to-face encounters between the physicians and patient-beneficiaries identified on the submitted CMS 1500s.

63. Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 presented or caused to be presented these claims for payment to the United States, through the VICTIM PROGRAMS, knowing such claims were false or fraudulent.

64. By virtue of the false or fraudulent claims presented or caused to be presented by Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10, the United States has suffered actual damages in an amount to be determined at trial, is entitled to recover three times the amount by which it was damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims presented or caused to be presented, plus interest, attorney's fees, and costs.

## COUNT 2
## Violation of 31 U.S.C. § 3729(a)(1)(G)
### (*Not Refunding Illegally Obtained Monies*)

65. Plaintiff-Relator KARLENE HOLLIMON hereby realleges and incorporates by reference paragraphs 1-59 of this Complaint.

66. This is a claim for damages and civil money penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, against Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 for knowingly presenting or causing to be presented false or fraudulent claims for payments from the United States, through the VICTIM PROGRAMS, all in violation of 31 U.S.C. § 3729(a)(1)(G).

67. These claims were false or fraudulent because the defendants, after having induced the United States, through the VICTIM PROGRAMS to pay claims based on false statements, representations, and certifications on CMS 1500s, knowingly withheld and refused to refund the illegally obtained monies.

68. Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 knowing and intentionally refused to refund previously obtained payments from the VICTIM PROGRAMS to the United States, knowing such claims had been false or fraudulent and such refunds were required.

69. By virtue of their knowing and intentional refusal to refund prior payments based on false or fraudulent claims presented or caused to be

presented by Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10,

the United States has suffered actual damages in an amount to be

determined at trial, is entitled to recover three times the amount by which it

was damaged, plus civil money penalties of not less than \$5,000 and not more

than \$10,000 for each of the false or fraudulent claims presented or caused to

be presented, plus interest, attorney's fees, and costs.

### COUNT 3
### Violation of 31 U.S.C. § 3729(a)(1)(C)
### (*Conspiracy to Defraud By Getting a*
### *False or Fraudulent Claim Paid or Allowed*)

70.     Plaintiff-Relator KARLENE HOLLIMON hereby realleges and

incorporates by reference paragraphs 1-59 of this Complaint.

71.     Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10,

and others known and unknown, did combine, conspire, confederate, and

agree, and reach an understanding and agreement, both express and implied,

with each other and with others, to defraud the United States by getting false

or fraudulent claims paid or allowed, in violation of 31 U.S. C. § 3729(a)(3).

72.     In furtherance of their conspiracy, the defendants committed

hundreds of overt acts of preparing and submitting CMS 1500 claim forms

knowing that the services identified had never been provided.

73.     The United States has been damaged by the creation or use, or

both, of false records to obtain fraudulent payments or approval by

Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 in an amount
to be proven at trial.

74.     The United States has suffered actual damages and is entitled to
recover three times the amount by which it was damaged, plus civil money
penalties of not less than $5,000 and not more than $10,000 for each of the
fraudulent claims presented or caused to be presented, plus interest,
attorney's fees, and costs.

## COUNT 4
### Violation of O.C.G.A. § 49-4-168 *et seq.*
### (*False or Fraudulent Claims Paid or Allowed,*
### *False or Fraudulent Statements and Certifications,*
### *And Conspiracy to Make False Claims and Records*)

75.     Plaintiff-Relator KARLENE HOLLIMON hereby realleges and
incorporates by reference paragraphs 1-59 of this Complaint.

76.     Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10
knowingly made, used, or caused to be made or used, false or fraudulent
claims, as well as false or fraudulent statements and certifications—
specifically, that E/M office visits occurred involving face-to-face physician-
patient encounters—to get a false or fraudulent claim allowed or paid by the
state of Georgia, in violation of the GFMCA, O.C.G.A. § 49-4-168 *et seq.*

77.     Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10
and others known and unknown did combine, conspire, confederate, and
agree, and reach an understanding and agreement, both express and implied,

with each other and with others, to defraud the state of Georgia by getting false or fraudulent claims paid or allowed, in violation of the GFMCA, O.C.G.A. § 49-4-168 *et seq.*

78. The state of Georgia has been damaged by the submission of false and fraudulent claims, as well as the creation or use, or both, of false statements and certifications, and conspiracy to commit same, to obtain fraudulent payments or approval by Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 in an amount to be proven at trial.

79. The state of Georgia has suffered actual damages and is entitled to recover three times the amount by which it was damaged, plus civil money penalties of not less than $5,000 and not more than $10,000 for each of the fraudulent claims presented or caused to be presented, plus interest, attorney's fees, and costs.

## COUNT 5
## Violation of 31 U.S.C. § 3730(h):
## (*Retaliatory Discharge*)

80. Plaintiff-Relator KARLENE HOLLIMON hereby realleges and incorporates by reference paragraphs 1-59 of this Complaint.

81. Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 unlawfully retaliated against RELATOR in violation of 31 U.S.C. §3730(h), because she (a) engaged in protected activity under the FCA by reporting that defendants had submitted false and fraudulent claims to the VICTIM

PROGRAMS, and (b) was discriminated against because of her protected activity by virtue of her termination when other similarly situated employees were not treated the same based on the same or worse performance activities.

82. Defendants had full knowledge of RELATOR's protected activity. And defendants' retaliation was motivated, at least in part, because RELATOR repeatedly engaged in the protected activity of stating that the false claims for non-existent office visits were being submitted to VICTIM PROGRAMS.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Relator KARLENE HOLLIMON respectfully prays that:

A. With respect to Counts 1-3, judgment be entered in favor of Plaintiff-Relator KARLENE HOLLIMON, on behalf of the United States and against Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 for all damages sustained by the United States as provided by the False Claims Act, for civil money penalties of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims presented or caused and false or fraudulent records, statements, or certifications presented, plus interest, attorney's fees, and costs;

B. With respect to Count 4, judgment be entered in favor of Plaintiff-Relator KARLENE HOLLIMON, on behalf of the state of Georgia

and against Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 for all damages sustained by the state of Georgia as provided by the GFMCA, for all applicable civil money penalties for each of the false or fraudulent claims presented or caused and false or fraudulent records, statements, or certifications presented, plus interest, attorney's fees, and costs;

C.     With respect to Count 5, judgment be entered in favor of Plaintiff-Relator KARLENE HOLLIMON against Defendants CRH HEALTHCARE, LLC and JOHN DOES 1-10 for all damages sustained by Plaintiff-Relator KARLENE HOLLIMON because of her retaliatory discharge as provided by the False Claims Act, plus interest, attorney's fees, and costs; and

D.     Such other and further relief and benefits be ordered as the cause of justice may require.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable of right by a jury.

Respectfully submitted,

ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net

- 23 -

THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

JACK ROSENBERG
Georgia Bar No. 614475
5425 Glenridge Drive, Suite 53
Atlanta, GA 30342
(404) 343-1091
jackrosenberg2@gmail.com

*Attorneys for Plaintiff-Relator
Karlene Hollimon*